# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JANNA HALL

VERSUS

KENNY HABUL

CIVIL ACTION NO.

13-406-SDD-RLB

## RULING

This matter is before the Court on the *Motion to Dismiss for Lack of Personal Jurisdiction* pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure filed by the Defendant, Kenny Habul.[1] Plaintiff, Janna Hall has filed an *Opposition* to the motion.[2] For the reasons which follow, the Defendant's motion is denied.

## I. Factual Background

In 2001, Plaintiff and Defendant met in Las Vegas, Nevada. Plaintiff alleges that beginning in 2002, Plaintiff and Defendant entered into a bi-continental real estate development partnership and/or joint venture whereby they jointly purchased real estate in Sanctuary Cove, Australia, and subsequently constructed homes thereon for resale. Plaintiff and Defendant also purchased land surrounding Lake Norman, North Carolina "for the construction of environmentally green facilities and a retirement community."[3] Plaintiff alleges this partnership/joint venture continued until 2012.

---

[1] Rec. Doc. No. 4.

[2] Rec. Doc. No. 10.

[3] *Id.* at ¶ 5.

During the course of this partnership/joint venture, Plaintiff contends she advanced to the Defendant substantial sums of money totaling approximately $1,963,000.00, which included a building loan and construction loan in Plaintiff's name for these projects. Plaintiff also contends she purchased land in Mooresville, North Carolina for the construction of her personal home because she and Defendant had agreed that, upon completion of the Lake Norman Retirement Community, Plaintiff would live near the facility and manage its daily operations. With this in mind, Plaintiff claims she paid approximately $655,000 for the land; however, a current contract for the purchase of this property is for a substantially reduced amount causing a loss to Plaintiff of approximately $250,000. Plaintiff also contends she advanced to the Defendant monies for his personal use in the amount of approximately $180,000, and she incurred substantial travel expenses in pursuit of this business venture in the amount of $21,000.

Plaintiff claims that, to date, she has received from Defendant approximately $662,080.00, which includes 50% of the profits resulting from only one of the Sanctuary Cove developments, reimbursement for the Defendant's use of funds designated by Plaintiff for her tax indebtedness, and a small repayment of one personal loan made to Defendant. Plaintiff further claims the Defendant has made several loan payments on the construction loan intended for building Plaintiff's personal home in North Carolina.

As partners and/or joint venturers in these real estate developments, Plaintiff argues the Defendant owes her a fiduciary duty to manage properly and account for funds. Plaintiff seeks a full accounting from the Defendant of the sources and uses of funds relating to her interests held in common between them, and amounts of loans made by the Plaintiff to the Defendant and their shared enterprises. On October 26, 2012, Plaintiff sent

Doc 581                                                            2

Case 3:13-cv-00406-SDD-RLB   Document 26   10/24/13   Page 2 of 17

Defendant a formal demand letter via certified mail to Defendant's address in North Carolina. Defendant responded to Plaintiff via email; however, Plaintiff contends his response was incomplete. Plaintiff argues in the alternative, that should the Court not find that a partnership or joint venture existed between Plaintiff and Defendant, then Plaintiff claims the monies advanced to the Defendant were loans for which she is entitled repayment with interest.

Plaintiff filed a *Petition for Accounting* against the Defendant in Louisiana state court.[4] The Defendant removed this case to federal court in June of 2013.[5] The Defendant moves to dismiss this case under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. Defendant contends this Court lacks personal jurisdiction over him because he does not have continuous and systematic contacts with the state of Louisiana, and the business dealings between himself and Plaintiff have no connection to the state of Louisiana. Defendant further contends that all business activities referenced in the *Petition* involve projects located in Australia and North Carolina. The Defendant argues that he has traveled to Louisiana on only three occasions: once for a motor sports event, a trip with his family to Baton Rouge for two to three days (visiting Plaintiff), and a trip to New Orleans for Mardi Gras for two to three days. The Defendant further contends none of these visits involved business. He has never owned or leased property in Louisiana, has never maintained a mailing address in Louisiana, has never paid taxes in Louisiana, and has never entered into any contracts to be performed in Louisiana. For

---

[4] Rec. Doc. No. 1-2.

[5] Rec. Doc. No. 1.

these reasons, Defendant contends he is not subject to either general or specific personal jurisdiction in Louisiana.

## II. Law & Analysis

Plaintiff has alleged that she and the Defendant entered into a joint venture or partnership. The parties have not argued this issue in the briefs relating to the Defendant's *Motion to Dismiss*. The Court will assume a joint venture relationship or partnership existed between Plaintiff and Defendant for the purposes of this motion, reserving the rights of both parties to address this issue at a later date if necessary.

Under Louisiana law, a joint venture "results from two or more persons undertaking to combine their efforts, knowledge, property or labor to engage in an[d] carry ou[t] a single business venture for joint profit, where profits and losses are shared, with each party having some right of control over the business."[6] Further, the essential elements of a joint venture are generally the same as that of partnership under Louisiana law; as such, joint ventures are governed by the law of partnership.[7] "There is a fiduciary duty between members of a joint venture similar to that which exists between partners in a partnership."[8] While "'no formal or specific agreement is required for the formation of a joint venture,'"[9] [p]artners in a joint venture owe fiduciary duties and an accounting for profits. The

---

[6] *White Haul Transport, Inc. v. Coastal Bridge Company, L.L.C.*, No. 06-11260, 2008 WL 2308858, at *2 (E.D. La. June 3, 2008), citing *Garbert v. Badon & Ranier*, 2008 WL 867294, at *8 (La. App. 3 Cir. Apr. 8, 2008).

[7] *Id.* at *4, citing *Cajun Electric Power Cooperative, Inc. v. McNamara*, 452 So.2d 212, 215 (La. App. 1st Cir. 1984), *writ denied*, 458 So.2d 123 (La. 1984).

[8] *White Haul*, at *4, citing *Moroux v. Toce*, 943 So.2d 1263 (La. App. 3 Cir. 2006).

[9] *Hubbard v. Pike*, 42,233 (La. App. 2 Cir. 7/11/07), 962 So.2d 1094, 1101 (Caraway, dissenting), quoting *Riddle v. Simmons*, 589 So.2d 89, 92 (La. App. 2d Cir. 1991).

accounting would at least represent a joint obligation of the partners."[10] Assuming the Defendant owes the Plaintiff an accounting pursuant to their joint venture, the Court must determine whether it has personal jurisdiction over the Defendant.

## A. Personal Jurisdiction

In Defendant's *Motion to Dismiss*, he claims this Court lacks personal jurisdiction over him as a citizen of Australia who resides in North Carolina. For a federal court to exercise personal jurisdiction over a non-resident defendant, (1) there must be a long-arm statute of the state that authorizes the exercise of jurisdiction; and (2) such an exercise of jurisdiction must comport with federal constitutional guarantees of Due Process.[11] Louisiana's long-arm statute is drafted very broadly, allowing for jurisdiction to extend as far as is permissible under the federal constitution.[12] Therefore, "[b]ecause Louisiana's long-arm statute extends jurisdiction to the full limits of due process, a federal court sitting in Louisiana need only determine whether the exercise of its jurisdiction satisfies the requirements of constitutional due process."[13]

Personal jurisdiction may be either specific jurisdiction or general jurisdiction. Defendants can be subject to general *in personam* jurisdiction if they have "continuous and systematic" contacts with the forum state.[14] The continuous corporate operations within

---

[10] *Id.*, citing La. C.C. art. 2809.

[11] *Rittenhouse v. Mabry*, 832 F.2d 1380, 1383-84 (5th Cir. 1987).

[12] La. Rev. Stat. Ann. § 13:3201(B).

[13] *Home Decor of Elmwood Oaks, LLC v. Jiyou Arts & Frames Co.*, No. 08–762, 2009 WL 273193, at *5 (E.D.La. Jan. 23, 2009).

[14] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 1872 n. 9 (1984).

a state must be substantial and of such a nature as to justify suit.[15] This test "is a difficult one to meet, requiring extensive contacts between a defendant and a forum."[16]

When an action arises out of or is related to the defendant's contacts with the forum, jurisdiction is commonly referred to as "specific jurisdiction."[17] "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [the] 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum... and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[18] Furthermore, "[a] single act by the defendant directed at the forum state ... can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."[19]

To determine if the requirements of constitutional due process are satisfied, the Supreme Court has articulated a two part analysis wherein the plaintiff carries the burden to show: (1) that the defendant has purposefully availed himself of benefits and protections of the forum state by establishing minimum contacts; and (2) that the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and

---

[15] *International Shoe*, 66 S.Ct. at 159.

[16] *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001).

[17] *See Helicopteros*, 104 S.Ct. at 1872 n.8.

[18] *Burger King*, 471 U.S. 462, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)(citations and footnotes omitted).

[19] *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993)(citing *Helicopteros*, 104 S.Ct. at 1872 n. 8).

substantial justice.[20] In making this determination, a court must accept as true the uncontroverted allegations in the plaintiff's complaint and must resolve all factual conflicts in the plaintiff's favor.[21]

### 1. Minimum Contacts

Generally, unilateral actions of the plaintiff or a third party are insufficient to establish minimum contacts over a defendant.[22] The Fifth Circuit has held that the exchange of communications in the course of carrying out a contract is alone not enough to constitute the required availment of the benefits and protections of Louisiana law.[23] Likewise, merely contracting with a resident or entity in the forum state will be insufficient to establish minimum contacts.[24] Nonetheless, the Fifth Circuit has held that when a court contemplates whether minimum contacts exist, it should consider prior negotiations and anticipated future occurrences that would result from the contract.[25]

Recognizing that the Court must resolve all factual disputes in favor of the Plaintiff on a motion to dismiss, the Court finds that the Defendant repeatedly directed contact toward the Plaintiff, a Louisiana resident. The Defendant did not merely exchange communications with Plaintiff; instead, he solicited business with the expectation of a long-

---

[20] *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also Thompson v. Chrysler Motor Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985) (stating that if a nonresident defendant challenges personal jurisdiction, the burden is on the plaintiff to make a prima facie case that personal jurisdiction exists).

[21] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.2001).

[22] *Hydrokinetics, Inc. v. Alaska Mechanics, Inc.*, 700 F.2d 1026 (5th Cir.1983).

[23] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999); *Hydrokinetics*, 700 F.2d at 1028.

[24] *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir.2009).

[25] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir.2006).

term relationship with a Louisiana resident, while in her home, which involved interactions and dealings with her over a long period of time. In his *Reply* memorandum, the Defendant referred to his visits to Louisiana as "sporadic" rather than challenging Plaintiff's contention that he had visited her home on seven occasions, and not three as previously asserted by the Defendant, during the course of their business relationship.

The Court also finds that the Defendant purposefully directed his activities towards this jurisdiction, including a calculated effort to engage and solicit business and extract profits from this jurisdiction. The Court recognizes that "an inescapable fact of modern life dictates that a substantial amount of business will be transacted by mail and by electronic wire communications across state lines."[26] The Fifth Circuit has held that, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward a resident of another State, the mere absence of physical contacts within the forum state cannot defeat personal jurisdiction there."[27] Resolving all factual disputes in Plaintiff's favor, the Court finds that the Defendant purposefully "reached out" to the Plaintiff by visiting her in her home and soliciting her participation and funds in these real estate ventures. The Defendant continued this relationship by email and telephone and on several occasions solicited and accepted more funds from the Plaintiff. The Defendant undertook these actions with the goal of establishing a long-term relationship with Plaintiff and with the foreseeable result of causing economic activity within the forum state. Thus, the Court finds that the Defendant had sufficient minimum contacts with Louisiana, and this action arises out of,

---

[26] *Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 385 (5th Cir. 2003), citing *Burger King*, 471 U.S. at 476.

[27] *Id.*, citing *Burger King*, 471 U.S. at 476.

Case 3:13-cv-00406-SDD-RLB   Document 26   10/24/13   Page 8 of 17

or relates to, his activities directed towards Louisiana based on his obligations to the Plaintiff under their joint venture/partnership.

## 2. Fair Play and Substantial Justice

Upon a finding of minimum contacts, a court will exercise jurisdiction unless there are legitimate concerns regarding fair play and substantial justice that would require it to do otherwise.[28] "[O]nce a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair."[29] A defendant only overcomes this burden by making a "compelling case" against the exercise of personal jurisdiction.[30] Furthermore, the Fifth Circuit has determined that if minimum contacts are established, it will be rare that a court determines that the exercise of jurisdiction would be unfair, since the interests of the forum state in resolving the matter may justify even large burdens on the non-resident defendant.[31]

The Fifth Circuit has articulated the criteria a district court should consider in determining whether it would be unfair to exercise personal jurisdiction even where minimum contacts have been established; these are: (1) the burden on the defendant having to litigate in the forum; (2) the forum state's interests in the lawsuit; (3) the plaintiff's interests in convenient and effective relief; (4) the court's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental

---

[28] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir.1999).

[29] *Id.*

[30] *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

[31] *McFadin*, 587 F.3d at 759–60.

Doc 581           9

social policies.[32]

The Court finds the Defendant has not shown that the Court's exercise of personal jurisdiction over him would be unfair or unreasonable. The record reflects that the Defendant came to Louisiana and stayed in Plaintiff's home on several occasions, apparently for business and social reasons. The Court finds the exercise of personal jurisdiction would not offend due process. The Court further finds that Louisiana has a viable interest in protecting its citizen, who now claims she is destitute based on the actions of the Defendant. The Plaintiff has a true interest in securing relief and the exercise of jurisdiction over this Defendant serves the efficient administration of justice. It is disingenuous for the Defendant to argue he cannot come to this forum for an accounting, which he owes to Plaintiff based on their extensive business relationship, but he has had no problem coming to Louisiana for social visits, sporting events, and Mardi Gras.

## B. Applicable Jurisprudence

The applicable jurisprudence further supports the Court's exercise of personal jurisdiction in this case. For example, in *Wien Air Alaska, Inc. v. Brandt*, a client sued its German former attorney in Texas state court, alleging fraud, fraudulent inducement, breach of contract, and breach of fiduciary duties.[33] The case was removed to federal district court, and the district court dismissed the case for lack of personal jurisdiction. On appeal, the Fifth Circuit reversed the district court, finding that the attorney's contacts were sufficient to confer personal jurisdiction.

---

[32] *Id.* (citing *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir.2006)).

[33] 195 F.3d 208 (5th Cir. 1999).

Wien Air is an Alaskan corporation based in Texas. Brandt is a citizen of Germany who provided legal advice as attorney for Wien Air from August of 1989 to April of 1991. Brandt visited Texas in 1989 to help the owner acquire Wien Air, then conducted the majority of his business with Wien Air through foreign meetings, correspondence and communications to Texas. There was also a final set of meetings in Texas in April of 1991.[34] Brandt provided his legal services to the plaintiff in the formation of several German companies. During these transactions, the defendant made various phone calls and sent faxes and letters to Texas, the forum state. The plaintiff alleged that these communications contained fraudulent misrepresentations. The plaintiff also alleged that the defendant made intentional, material misrepresentations while attending meetings in Texas.

The Fifth Circuit noted that "[w]here facts are disputed, the plaintiff presenting a prima facie case is entitled to have the conflicts resolved in his favor."[35] The court also stated that, "[e]ven if the parties formed their relationship in Germany, however, a single act by Brandt directed toward Texas that gives rise to a cause of action by Wien Air can support a finding of minimum contacts."[36]

The court noted the plaintiff's allegations that Brandt performed several tortious acts outside of Texas directed towards Wien Air in Texas. The court stated that "[t]hese actions had foreseeable effects in the forum and were directed at the forum. These contacts take

---

[34] *Id.* at 209.

[35] *Id.* at 211, citing *Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990); *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 327 (5th Cir. 1996).

[36] *Id.*, citing *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993).

Case 3:13-cv-00406-SDD-RLB   Document 26   10/24/13   Page 11 of 17

the form of letters, faxes, and phone calls to Texas by Brandt whose contents contained fraudulent misrepresentations and promises and whose contents failed to disclose material information."[37] The court also noted Wien Air's sworn affidavit from an employee stating that numerous calls, letters, and faxes were made by Brandt to Wien Air in Texas. Wien Air claimed these calls contained the promises, assurances, and representations that were the basis of the lawsuit.[38] The court also found that Brandt had provided services through these communications by sending a fax copy of a Notary Act he had prepared in one of the negotiations, a letter containing promises, and a letter containing legal advice with respect to pending contracts.[39]

Brandt disputed the number and contents of the communications at issue and argued that there were few or no calls, and no evidence that the content related to or gave rise to a cause of action. The court stated that "[a]t this stage, however, any conflict between the plaintiff and defendant with respect to the content and existence of these communications must be construed in favor of Wien Air. As such, the prima facie evidence indicates that Brandt directed affirmative misrepresentations and omissions to the plaintiff in Texas."[40]

Brandt argued that communications directed into a forum standing alone are insufficient to support a finding of minimum contacts.[41] The court distinguished *Wien Air*

---

[37] *Id.* at 212.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 213.

[41] *Id.* (citations omitted).

Case 3:13-cv-00406-SDD-RLB   Document 26   10/24/13   Page 12 of 17

from the cases relied upon by the defendant, stating:

> When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone, constitutes personal availment. The defendant is purposefully availing himself of "the privilege of causing a consequence" in Texas.[42] It is of no use to say that the plaintiff "fortuitously" resided in Texas.[43] If this argument were valid in the tort context, the defendant could mail a bomb to a person in Texas but claim Texas had no jurisdiction because it was fortuitous that the victim's zip code was in Texas. It may have been fortuitous, but the tortious nature of the directed activity constitutes purposeful availment.
>
> Of course, when a lawyer chooses to represent a client in another forum, that in itself does not confer personal jurisdiction if the claim does not arise from the lawyer's contacts with the forum.[44] However, when the claim arises from a breach of fiduciary duty based on a failure to disclose material information, the fact that the lawyer continually communicated with the forum while steadfastly failing to disclose material information shows the purposeful direction of material omissions to the forum state.[45]

The court found that Wien Air had established a prima facie case of minimum contacts over Brandt with respect to its claims of fraud, fraudulent inducement, breach of contract, and breach of fiduciary duty. As such, Brandt was required to make "a compelling case" against jurisdiction.[46] With regard to examining "traditional notions of fair play and substantial justice," the court noted the interests to be considered. The court ultimately concluded that "[i]f a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of

---

[42] *Id.*, citing *Serras v. First Tennessee Bank National Ass'n*, 875 F.2d 1212 (6th Cir. 1989).

[43] *Id.*, citing *Holt Oil*, 801 F.2d at 778.

[44] *Id.*, citing *Austad*, 823 F.2d at 226.

[45] *Id.*, citing *Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233 (7th Cir. 1990).

[46] *Id.* at 215, citing *Burger King*, 471 U.S. at 477.

the plaintiff and the forum state."[47]

Brandt claimed the assertion of personal jurisdiction would be unfair and unreasonable because of the litigation's relationship to Germany. The court noted, "[a]dmittedly, litigation in the U.S. would place a burden on the defendant. However, once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant."[48] Further, "Texas clearly has an interest because the dispute involves a corporation whose principal place of business is in Texas, and the corporation allegedly was defrauded."[49] The court held that, "[r]esolving the conflicts in a light most favorable to the plaintiff, we find no overwhelming burden to the defendant that outweighs the legitimate interests of the plaintiff and the forum state."[50]

Likewise, in *Pollard v. Arsenal Solutions WorldWide, Inc.*, the plaintiffs sued the defendant for breach of fiduciary duty arguing he was subject to personal jurisdiction in the state of Louisiana because he purposefully directed his activities at the plaintiff, a resident of Louisiana.[51] The defendants were domiciled in North Carolina, Delaware, London, California, and South Africa. The plaintiffs alleged the defendants conspired to defraud plaintiffs and other minority stockholders by taking control of Pollard's company without paying for Pollard's stock, work, or his financial investment in the company.[52] The plaintiffs

---

[47] *Id.*, citing *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 548 (5th Cir. 1985).

[48] *Id.*, citing *Asahi*, 480 U.S. at 115.

[49] *Id.*

[50] *Id.* at 216.

[51] No. 08-335, 2008 WL 4450284 (E.D. La. Sept. 26, 2008).

[52] *Id.* at *1.

Case 3:13-cv-00406-SDD-RLB   Document 26   10/24/13   Page 14 of 17

argued that as a result of the defendants' conspiracy, Pollard persuaded many friends and family members to invest in Arsenal, which was set to merge with IBM, and the total amount invested exceeded two million dollars. The plaintiffs also argued that Arsenal and members of its board breached their fiduciary duties to minority stockholders by approving a merger that was not in the best interests of the shareholders but in their own best interests, resulting in the damages to the minority shareholders.[53]

The defendants challenged the court's personal jurisdiction over them. The court found that one of the defendants had several contacts with the state of Louisiana. Specifically, during the summer of 1998, the director of defendant SEITF, Miller, visited New Orleans and met with Pollard over lunch. Miller claimed the lunch was not business related; however, Pollard alleged that it was this lunch where Miller "began to 'induce Pollard to invest in a SEITF fund and to induce Pollard to have ADD contract with SETIF [sic] as its venture capital partner', that Miller 'misrepresented to Pollard SEITF's experience to fund high technology companies; and that Miller solicited and obtained from Pollard $100,000,'" among other misrepresentations.[54] Pollard also attests that in addition to Miller's New Orleans business trip, Miller maintained contact with Pollard from August to December of 1998 through phone calls, faxes, and e-mails, all pertaining to the merger of Pollard's company ADD with ORSI.[55]

The court found that plaintiffs had not shown "continuous and systematic" contacts with Louisiana which would establish general jurisdiction. However, the court did find, after

---

[53] *Id.*

[54] *Id.* at *4.

[55] *Id.* at *5.

"resolving all factual disputes in favor of plaintiffs, plaintiffs have shown a *prima facie* case that Miller is subject to specific personal jurisdiction because Miller 'purposefully directed' his activities at Pollard who is a resident of the forum, and that Leypoldt's claim against Miller 'arises out of or relates to' those activities."[56]

The court also held that the defendants had failed to carry their burden of showing that its exercise of jurisdiction over Miller would be unfair or unreasonable. The court stated:

> Because Miller came to Louisiana to meet with Pollard and continued contact with Pollard regarding for same business reasons, the court does not find the exercise of personal jurisdiction would not [sic] offend due process.[57] Further because Pollard is a Louisiana citizen and because some of the events which give rise to plaintiffs' allegations occurred in Louisiana, the court finds that Louisiana has a viable interest in protecting shareholders like Pollard. The court finds that Pollard has a true interest in securing relief; that the interest of the interstate judicial system in the efficient administration of justice is served by the exercise of personal jurisdiction over Miller.[58]

It is clear that applying the analysis and reasoning from the case set forth above to the facts of this case, this Court has specific jurisdiction over the Defendant.

---

[56] *Id.*, quoting *Burger King*, 471 U.S. 462.

[57] *Id.*, citing *Walk Haydel & Assoc., Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 242-45 (5th Cir. 2008)(specific jurisdiction found where communications containing material omissions were directed at Louisiana resident and cause of action arose from or related to same).

[58] *Id.*, citing *Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

Case 3:13-cv-00406-SDD-RLB   Document 26   10/24/13   Page 16 of 17

## III. Conclusion

For the reasons set forth above, the Defendant's *Motion to Dismiss*[59] is DENIED. The hearing on this motion currently set for Monday, November 4, 2013, is hereby CANCELLED.

IT IS SO ORDERED.

Baton Rouge, Louisiana, this 24 day of October, 2013.

*Shelly Dick*
SHELLY D. DICK, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[59] Rec. Doc. No. 4.